UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARLES BURKE, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 14-CV-662 (JCH) |
| v. | : | |
| | : | |
| TOWN OF EAST HARTFORD AND | : | |
| MARK SIROIS, CHIEF OF POLICE | : | MARCH 4, 2016 |
|     Defendant. | : | |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 37)**

**I.     INTRODUCTION**

Charles Burke brings this action under section 1983 of title 42 of the United States Code against the Town of East Hartford ("East Hartford") and its former Chief of Police, Mark Sirois (collectively, the "defendants"),[1] for alleged violations of the Fourth, Tenth, and Fourteenth Amendments to the United States Constitution.  Amended Complaint ("Complaint") (Doc. No. 13).  Burke claims that the defendants violated his federal and state constitutional rights when they enforced, or threatened to enforce, Connecticut's criminal lockout statute, section 241 of title 53a of the Connecticut General Statutes, against him; that the criminal lockout statute is void for vagueness, or unconstitutional as applied; and that the Town of East Hartford is liable to him for "damages inflicted by the individual defendants pursuant to the common law claims."  Id. at 9-16.[2]

---

[1] Burke also named the Attorney General of the State of Connecticut as a defendant.  See Complaint (Doc. No. 1).  However, because Burke was unable to show that the Attorney General was served with process, his action against the Attorney General was dismissed for failure to prosecute.  See Order (Doc. No. 27).

[2] When citing to Burke's Complaint, it is necessary to refer to page numbers, rather than paragraph numbers, because the paragraph numbers in Burke's Complaint are inconsistent and duplicative.  Complaint at 13.

The defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Defendants' Motion for Summary Judgment ("Motion") (Doc. No. 37).  In support of the Motion, the defendants have submitted, as required by Local Rule 56(a)(1), a statement of facts as to which the defendants contend there is no genuine issue to be tried.  Defendant's Local Rule 56(a)(1) Statement ("Rule 56(a)(1) Statement") (Doc. No. 37-2).  Burke has filed a Memorandum in Opposition ("Opposition") (Doc. No. 41).

For the reasons set forth below, the defendants' Motion is **GRANTED**.

## II.   BACKGROUND

The facts of this case are not in dispute.[3]  Indeed, the facts would be familiar to anyone acquainted with the five prior cases involving Charles Burke that have been litigated in the state and federal courts over the past eighteen years, including a case Burke unsuccessfully tried to a jury before the undersigned in 2001.[4]  Each case, including this one, concerns Burke's business practices and his contentions that the Connecticut housing and criminal codes have been unlawfully or unconstitutionally applied to him.  Rule 56(a)(1) Statement ¶ 7.

---

[3] Local Rule of Civil Procedure 56(a)(1) requires a party moving for summary judgment to provide "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1).  The Rule further provides that "[a]ll material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with local Rule 56(a)2." Id.
Burke failed to file the requisite Local Rule 56(a)(2) Statement among his papers opposing the defendants' Motion.  By operation of Local Rule 56(a)(1), this failure has the effect of "deem[ing] admitted" "all material facts set forth in [the moving party's Local Rule 56(a)(1) Statement] and supported by the evidence." See, e.g., United States v. Real Property Located at 229 Potter Road, Northern Kingstown, R.I., 91 F. Supp. 3d 303, 305 n.1 (D. Conn. 2015).

[4] Murphy v. Burke, Case No. CV-5285, 1995 WL 790584 (Conn. Super. Ct. Aug. 17, 1995); Webster v. Burke, No. H-1181, 1999 WL 1212178 (Conn. Super. Ct. Dec. 13, 1999); Burke v. Mormino, No. 04-CV-771 (PCD), 2005 WL 2072323 (D. Conn. Aug. 25, 2005); 18 Brewer Assocs., LLC v. Mormino, No. CVH-01-6792, 2007 WL 4327905 (Conn. Super. Ct. Dec. 5, 2007); Burke v. Shay, No. 98-CV-1342 (JCH) (D. Conn. 1998).  The last of these was tried before the undersigned.

Burke owns and operates four licensed rooming houses in the Town of East Hartford, located at 18 Brewer Street, 26 Sisson Street, and 217 and 219 Burnside Avenue. Id. ¶ 1. East Hartford is a municipality incorporated under the laws and within the State of Connecticut, and Mark Sirois was, at the time of the events relevant to this case, the Chief of Police of East Hartford. Id. ¶ 2.

Landlords are required under Connecticut law to comply with certain procedures before evicting a tenant from their premises. See Conn. Gen. Stat. §§ 47a-23-42a. These procedures require the landlord, before evicting a tenant, to serve process on his tenant, appear in housing court, and obtain a judgment. Id. §§ 47a-23, 23a, 26, 26d. Connecticut law further provides, in pertinent part:

> Unless created to avoid the application of this chapter and [the] sections [governing the eviction process,] the following arrangement[ is] not governed by this chapter and [the] sections [governing the eviction process]: transient occupancy in a hotel or motel or similar lodging[.]

Id. § 47a-2(a)(4). To define "transient occupancy," Connecticut law provides:

> (1) Occupancy in a hotel, motel or similar lodging for less than thirty days is transient, except that such occupancy is not transient if the dwelling unit or room in such hotel, motel or lodging is occupied as the primary residence of the occupant from the beginning of such occupancy; and
>
> (2) Occupancy in a hotel, motel or similar lodging for thirty days or more is not transient, except that such occupancy is transient if the dwelling unit or room in such hotel, motel or lodging is not occupied as the primary residence of the occupant and the occupancy is for less than ninety days.

Id. § 47a-2(c)(1) & (2). As such, the determination of whether a person is "transient" or not, and whether the governing agreement was "created to avoid the application" of the

3

Housing Code, will necessary depend upon the facts of a given case.  See, e.g., Bourque v. Morris, 190 Conn. 364, 369-70 (1983); see also Murphy v. Burke, No. CV-5285, 1995 WL 790584 (Conn. Super. Ct. Aug. 17, 1995) and Webster v. Burke, No. H-1181, 1999 WL 1212178 (Conn. Super. Ct. Dec. 13, 1999) (finding Burke's lease agreements were designed to "avoid the application" of the eviction procedures).  Not only may transient residents be subject to eviction without the process guaranteed to tenants by Connecticut Housing Code, but a lien may be placed on their goods.  Conn. Gen. Stat. § 49-68.

While transient occupants may be subjected to a lien or eviction without process, non-transient occupants are protected by the Housing Code as well as the criminal law.  Specifically, section 214 of title 53a of the Connecticut General statutes provides:

> A landlord of a dwelling unit subject to [Conn. Gen. Stat. § 47a-1 et seq.], an owner of such a unit, or the agent of such landlord or owner is guilty of criminal lockout when, without benefit of a court order, he deprives a tenant . . . of access to his dwelling unit or his personal possessions.

A "dwelling unit" is defined, for purposes of section 214, as "any house or building, or portion thereof, which is occupied, is designed to be occupied, or is rented, leased or hired out to be occupied, as a home or residence of one or more persons."  Id. § 47a-1(c).  A "tenant" is defined as a "lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others or as is otherwise defined by law."  Id. § 47a-1(*l*).

At all times relevant to this case, the East Hartford Police Department ("EHPD") had adopted a policy, known as General Order 192.10.00 ("General Order") (Doc. No. 37-7), establishing guidelines for the investigation of complaints concerning lockouts.

Id. ¶ 28.  Under section 10.65 of the General Order, EHPD officers were to make arrests "only after obtaining an arrest warrant from the housing court."  Id. ¶ 29.  The General Order provides a summary of the relevant law, and includes a checklist of facts to consider in making the "difficult . . . legal judgement regarding tenancy."  General Order at 5-8.  Burke does not know whether the criminal lockout statute, or the EHPD policy guiding police investigation of alleged violations of the statute, has been enforced any differently against any other rooming houses in East Hartford.  Rule 56(a)(1) Statement ¶ 38.  He also does not know, and has presented no evidence to suggest, how the EHPD has actually trained its officers regarding the investigation of the criminal lockout statute, other than the existence of the General Order.  Id. ¶ 34.

Occupants of Burke's rooming houses sign "a special agreement explaining that, should they fail to pay, a lien may be placed on their goods in the room" and that "a lien may be placed on anyone else's goods in the room[.]"  Rule 56(a)(1) Statement ¶ 4.  Burke believes that this agreement ensures compliance with the law permitting liens on transient occupants' property, and also purports to allow him to lock them out without compliance with the eviction laws.  The agreement has these effects because, Burke claims, it conclusively establishes that his occupants are "transients."  See Rule 56(a)(1) Statement ¶ 5; Deposition of Charles Burke ("Burke Deposition") (Doc. 37-5) at 97-99.  It was formerly Burke's practice to move occupants from one rooming house to another if they desired to occupy one of his rooms for more than 90 days; he has foregone this practice out of fear of arrest.  Rule 56(a)(1) Statement ¶ 8.

With these statutory provisions, the General Order, and Burke's business practices as a backdrop, the facts leading to this case are agreed to have unfolded as

5

follows. On March 11, 2013, East Hartford Police Officer Mark Allen was dispatched to one of Burke's rooming houses, 26 Sisson Avenue, at Burke's request for assistance in removing an occupant, Brenda Beaudoin. Id. ¶ 11. Upon Allen's arrival, Burke told him that Beaudoin had left the premises after all, and that he intended to change the locks on her door in order to evict her. Id ¶ 13. Allen advised Burke not to do so, but Burke responded that he had had incidents in the past with East Hartford police concerning the criminal lockout statute, and that the police "did not know the law governing lockouts better than he does." Id. ¶ 14. When Allen left, Burke changed Beaudoin's locks. Id. ¶ 16.

Later that afternoon, Beaudoin contacted the police and reported that Burke had changed her locks. Id. ¶ 17. Allen met with Beaudoin, who told him that Burke had changed the lock to her room, thus depriving her of access to her personal belongings, including clothing, cancer medication, and an inhaler. Id. ¶¶ 18-19. She told Allen that she received mail at the residence and had been living there for approximately 10 weeks. Information (Doc. No. 37-6) at 9. She confirmed that Burke had not presented her with an eviction notice or court order before changing her locks. Rule 56(a)(1) Statement ¶ 20. In a later sworn statement in early April, Beaudoin averred that she was living in the woods in Enfield, Connecticut, and that Burke still had her property and would only return it in exchange for the balance of her unpaid rent. Id. ¶ 23.

On the basis of the foregoing information and an admission by Burke that he had, in fact, changed Beaudoin's locks, id. ¶ 21, Allen applied for an arrest warrant charging Burke with criminal lockout. Id. ¶¶ 24-25. On April 9, 2013, a housing prosecutor endorsed the application, and a warrant for Burke's arrest was issued by a Connecticut

6

Superior Court judge. Id. ¶ 27. The warrant was executed on May 5, 2013. Id. ¶ 30. The parties are in agreement that defendant Sirois "had no direct involvement whatsoever in Allen's investigation of [Burke]'s dispute with Ms. Beaudoin, or his decision to apply for a warrant charging [Burke] with criminal lockout." Id. ¶ 32. In fact, Sirois neither oversaw nor contributed to Allen's preparation of the warrant application that led to Burke's arrest. Id. ¶ 32.

Burke's Complaint alleges three causes of action. First, Burke claims that defendants Sirois and East Hartford violated the Fourteenth Amendment to the United States Constitution by subjecting Burke to false arrest and failing to "properly train[ their] officers." Complaint at 10. "The defendants," Burke alleges, "fostered and encouraged an atmosphere of lawlessness[,] repression[,] and a repetitive policy, custom, and practice of aggressive, abusive, and discriminatory behavior." Id. at 11. He also alleges that the "[d]efendants seek to put [him] out of business," id., and that their conduct violates the Contracts Clause of Article I, section 10, clause 1 of the United States Constitution.[5] Complaint at 11.

His second cause of action alleges that that the Criminal Lockout statute, section 214 of title 53a of the Connecticut General Statutes, is unconstitutionally vague and has been applied unequally against him in violation of Burke's rights secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Id. at 12-13.

---

[5] The Complaint attributes the Contracts Clause to the Tenth Amendment, which is clearly erroneous. However, in his Opposition, Burke claims that this misattribution constituted "a scrivener's error," and represented his "inten[tion] to file an amendment to the pleading to make this correction." Opposition at 9. No such amendment was filed. Nonetheless, the court will construe the pleading liberally as having sought to make a claim under the Contracts Clause.

7

Finally, Burke claims that the Town of East Hartford is liable to him for "damages inflicted by the individual defendants pursuant to the common law claims." Id. at 13.

## III.  STANDARD OF REVIEW

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." Id. In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). Once the moving party has satisfied that burden, to defeat the motion "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir. 2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving party must point to more than a mere "scintilla"

8

of evidence in its favor). "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

**IV.   DISCUSSION**

The Ruling proceeds as follows.  First, Burke's claims arising under the Equal Protection Clause and Contracts Clause are addressed briefly.  Second, the Ruling addresses Burke's claims against Chief Sirois and East Hartford concerning his arrest and his claims related to the Due Process Clause of the Fourteenth Amendment.  The Ruling will then address the constitutionality of the criminal lockout statute before addressing his "common law claim."

    A.   Equal Protection

The defendants' Motion is granted as to Burke's claim under the Equal Protection Clause because the record is devoid of any evidence to support a claim that Burke has been treated differently than similarly situated individuals.  Such differential treatment is a necessary element of such a claim.  See, e.g., Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001); see also Rule 56(a)(1) Statement ¶ 34 (indicating that Burke does not possess evidence regarding the treatment of similarly situated rooming house owners).

    B.   Contracts Clause

The defendants' Motion is also granted as to Burke's claim under the Contracts Clause.  That Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1.  Burke has marshaled no evidence whatsoever that the enforcement of the criminal lockout statute with which he takes issue has impaired his private contracts and, even if he did, such a statute is

certainly a "reasonable means to a legitimate public purpose." <u>Assoc. of Surrogates & Supreme Court Reporters Within City of New York v. State of New York</u>, 940 F.2d 766, 771 (2d Cir. 1991) (internal quotation marks and citations omitted).

### C. False Arrest

Burke's Fourth Amendment false arrest claim must fail as to both defendants, and as to that claim the defendants' Motion should be granted, because there is no evidence of record that Burke was subjected to a constitutional tort.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment has been incorporated against the states through the Due Process Clause of the Fourteenth Amendment. <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961). The Amendment guarantees the "right of an individual to be free from unreasonable seizures, including arrest without probable cause." <u>Covington v. City of New York</u>, 171 F.3d 117, 122 (2d Cir. 1999). "[T]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." <u>Id.</u> (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)).

Section 1983 of title 42 of the United State Code provides, in relevant part:

> Every person who, under color of any statute, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  A supervisor of a tortfeasor, who was not himself "directly involved" in the constitutional tort at issue, may be liable under section 1983 if "(1) the supervisory official, after learning of the [constitutional] violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event."  Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).  A municipality may be held liable under section 1983 to the extent that it promulgated a policy, or enforced a custom, that violated the Constitution, and that "'the execution of t[hat] policy or custom . . . inflicts the injury'" the plaintiff alleges to have suffered.  City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (quoting Springfield v. Kibbe, 480 U.S. 257, 267 (1987)); see also Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978).  As the foregoing illustrates, for either a supervisor or a municipality to be liable, a constitutional tort had to have been inflicted upon the plaintiff.

In this case, the evidence of record is insufficient to persuade a reasonable juror that Burke suffered a constitutional tort; consequently, neither Allen's supervisor, Chief Sirois, nor the Town of East Hartford, can be held liable under section 1983.

Because the parties agree that Chief Sirois was not directly involved in Burke's arrest, see Rule 56(a)(1) Statement ¶ 32, he could only be liable as a supervisor, Spencer, 139 F.3d at 112.  The only evidence of record that could possibly suggest that Chief Sirois was a "supervisor" for purposes of section 1983 is his endorsement of

General Order 192.10.00, which "establish[ed] guidelines and policy for the investigation and resolution of matters concerning complaints of dwelling lockouts."  General Order (Doc. No. 37-7) at 1, 4.  See Spencer ,139 F.3d at 112 (supervisory liability may exist where "the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue").  Several deficiencies in Burke's case prevent Sirois from being liable for Burke's arrest, notwithstanding his endorsement of the General Order.  First, Burke has pointed to no authority, and the court is unaware of any authority, that would support the contention that the General Order is unconstitutional.  Indeed, the General Order accurately describes the law and expressly requires the investigating officer to seek an arrest warrant, rather than make an on-the-premises arrest.  General Order 192.10.63(A).

The constitutionality of the General Order consequently insulates Chief Sirois and East Hartford from liability.  However, even if it were somehow defective, the undisputed evidence of record now before the court supports the defendants' position that Allen had probable cause for Burke's arrest.  "[T]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Covington, 171 F.3d at 122.  Here, Allen sought an arrest warrant based on several conversations with Beaudoin and two conversations with Burke himself.  Rule 56(a)(1) Statement ¶¶ 17-23.  From these conversations, Allen learned that Beaudoin received her mail at the rooming house, had no other home, kept her personal belongings there, and had lived there 10 weeks; he also learned that Burke had changed her locks without a court order.  See id.  In light of these facts, Allen had ample probable cause to believe that Beaudoin was a tenant for purposes of the Housing Code, and that Burke

12

had locked her out in violation of section 214 of title 53a of the Connecticut General Statutes.

Contrary to Burke's belief that the endorsement of a "Special Agreement" automatically renders an individual "transient," the law of Connecticut considers transiency on a case-by-case basis. See Bourque v. Morris, 190 Conn. 364, 369-70 (1983). Beaudoin had been living in the rooming house at 26 Sisson Avenue for 10 weeks, rendering her stay presumptively permanent (and thus subject to the criminal lockout statute). See Conn. Gen. Stat. § 47a-2(a)(4). That presumption could only be rebutted if "the dwelling unit . . . is not occupied as the primary residence of the occupant and the occupancy is for less than ninety days." Id. (emphasis added). In this case, Allen had probable cause to believe that 26 Sisson Avenue was Beaudoin's primary residence: she told him that, after her eviction from her apartment, she was homeless, had no belongings, and was living in the woods of Enfield, Connecticut.

The facts stated above, none of which Burke disputes, were put before a neutral magistrate, who duly issued a warrant for Burke's arrest. The arrest made pursuant to that warrant was supported by probable cause.[6] For this reason, and because the General Order is not unconstitutional, the defendants' Motion is granted as to Burke's false arrest claims against Chief Sirois and East Hartford.

---

[6] Burke argues that Allen's use of the terms "landlord" and "tenant" in his application for the arrest warrant render the application insufficient and, consequently, the resulting arrest warrant invalid. See Opposition at 7. This argument reflects a fundamental misunderstanding of the purpose of an application for an arrest warrant: to ensure that a neutral magistrate assess the alleged facts to determine the existence of probable cause. See, e.g., Nathanson v. United States, 290 U.S. 41, 46-47 (1933). The facts set forth in the application were sufficient to support a finding of probable cause irrespective of Allen's legal characterizations. Indeed, it was the duty of the magistrate independently to ascribe legal meaning to the facts alleged, not to accept Allen's legal conclusions. The superior court judge apparently concluded that, for purposes of the criminal lockout statute, and based on the facts averred to in Allen's application, Beaudoin was a "tenant" and Burke was a "landlord . . . or owner" of a "dwelling unit." Conn. Gen. Stat. § 47a-2(a)(4).

13

E.	Due Process

In his Complaint, Burke claims that "[t]he defendants by their conduct violated . . . the procedural due process rights and substantive due process rights guaranteed to the plaintiff by the 14th Amendment." Complaint at 10. The factual basis of this claim is difficult to discern. In his Opposition, Burke contends that he possesses certain, unnamed "Statutorily Granted Protections," the exercise of which the defendants curtailed by falsely arresting him. Opposition at 8-9. The curtailment of these "Statutorily Granted Protections," he asserts, constitutes a violation of procedural and substantive due process.

The defendants suggest that the "Statutorily Granted Protections" to which Burke refers are his supposed exemption, under Conn. Gen. Stat. § 47a-2, from the summary eviction process. Def.'s Reply to Pl.'s Opposition ("Defendants' Reply") (Doc. No. 42). Given the opaqueness of Burke's Complaint and Opposition, the court is left with no better option than to agree with the defendants. To the extent that, in fact, Burke claims that he had a "Statutorily Granted Protection" in the exemption provisions of the Housing Code, his claim is wholly without merit. Section 47a-2 expressly provides that the exemption does not apply to agreements "created to avoid the application of [the eviction process]," and the courts of Connecticut have, since at least 1983, made case-by-case determinations when deciding whether an occupant is a "transient" or not. Bourque v. Morris, 190 Conn. 364, 369-70 (1983). This case-by-case analysis simply deprives Burke neither of procedural due process (of which he received the ordinary protections of the criminal law, including a duly issued arrest warrant), nor substantive due process. See Graham v. Connor, 490 U.S. 386, 395 (1988) (constitutionality of

14

claims concerning in the reasonableness of searches or seizures governed by Fourth Amendment analysis, not substantive due process analysis). Therefore, the defendants' Motion is granted as to Burke's claims under the Due Process Clause in the First Cause of Action in his Amended Complaint. Complaint at 11.

   F.   The Constitutionality of Section 47a-2(a)(4)

Burke contends that the criminal lockout statute, Conn. Gen. Stat. § 47a-2(a)(4), is unconstitutionally vague. Complaint at 12. Peculiarly, the defendants' Motion fails to address this argument. Def.'s Mem. of Law in Support of Motion for Summary Judgment ("Memorandum in Support") (Doc. No. 37-1). Nonetheless, the court sua sponte enters judgment in favor of the defendants. District courts have long been recognized to have the power to enter summary judgment sua sponte where "the losing party was on notice that [it] had to come forward with all of its evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). As the Second Circuit has explained, "[a] sua sponte award of summary judgment may well be appropriate if it is clear that all of the evidentiary material a party might submit is before the court and no material issue of fact exists." Pugh v. Goord, 345 F.3d 121, 125 (2d Cir. 2003). Such is the case here. More importantly, the claim raises a pure question of law.

The Fourteenth Amendment to the United States Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without the due process of law." U.S. Const. amend. XIV, § 1. As the Supreme Court recently reiterated, "the Government violates th[e] guarantee [of due process] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair

15

notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015).

Connecticut's criminal lockout statute is neither vague nor standardless. To the contrary, it clearly defines its terms by cross-reference to the Housing Code. As discussed above, see supra at 4, section 214 of title 53a of the Connecticut General statutes provides:

> A landlord of a dwelling unit subject to [Conn. Gen. Stat. § 47a-1 et seq.], an owner of such a unit, or the agent of such landlord or owner is guilty of criminal lockout when, without benefit of a court order, he deprives a tenant . . . of access to his dwelling unit or his personal possessions.

A "dwelling unit" is defined, by cross-reference, as "any house or building, or portion thereof, which is occupied, is designed to be occupied, or is rented, leased or hired out to be occupied, as a home or residence of one or more persons." Conn. Gen. Stat. § 47a-1(c). A "tenant" is defined, by cross-reference, as a "lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others or as is otherwise defined by law." Id. § 47a-1(*l*).

It follows that, an owner of a "portion [of a building] which is occupied . . . as a home or residence of. . . a person entitled under a rental agreement to occupy [that area]" is criminally liable for locking that person out of the area without the benefit of a court order. Id. § 53a-214. The court cannot conclude that this statute fails to put "ordinary people [on] fair notice of the conduct it punishes." Johnson, 135 S. Ct. at 2556. The statute is neither unconstitutional on its face, nor as applied to Burke. Summary judgment shall enter in favor of the defendants as to Count Two of the Complaint.

16

### G. Common Law Claim

The final Count of Burke's Complaint reads: "Pursuant to [Conn. Gen. Stat.] § 52-557 the defendant Town of East Hartford is liable for damages inflicted by the individual defendants pursuant to the common law claims." Complaint at 13. Burke does not specify to what common law claims he refers, and the statute under which he purports to raise the cause of action provides:

> **Injury to children being transported to school.** In any action brought by any person for personal injuries received while being transported to or from school in a vehicle owned, leased or hired by, or operated under contract with, any town, school district or other municipality, it shall be no defense that such transportation is in the line of governmental duty or is mandated by the state. In any such action brought against any town, school district or other municipality, the defense of sovereign immunity shall not be available and it shall be no defense that the transportation was being provided by an independent contractor.

Conn. Gen. Stat. § 52-557. The record is devoid of any evidence tending to establish, or even remotely related to, allegations that a child was injured by the Town of East Hartford "while being transported to or from school." Id. As to this claim, summary judgment will enter in the defendants' favor.

The court admonishes counsel that an attorney who submits a pleading that contains contentions not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" risks incurring sanctions under the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 11(b)(2).

**V.     CONCLUSION**

For the reasons set forth above, the defendants' Motion for Summary Judgment (Doc. No. 37) is **GRANTED**.

**SO ORDERED**.

Dated this 4th day of March, 2016, at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge